## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DELARREN MASON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| SUPERINTENDENT DONALD SCHAEFER, | ) | |
| ST. CLAIR COUNTY, OFFICER MIKE | ) | |
| KLEB, OFFICER CRAIG BROWN, OFFICER | ) | |
| PATRICK YOUNG, OFFICER DALE | ) | JURY TRIAL DEMANDED |
| LUETKEMYER, OFFICER BRANDON | ) | |
| MILLER, OFFICER ARIEL MOSLEY, | ) | |
| OFFICER TYRONE SILLAS, OFFICER ZAC | ) | |
| LUETKEMYER, OFFICER LUCAS GEHRS, | ) | |
| OFFICER JOE VALLINA, OFFICER | ) | |
| BRIANNE FUNK, OFFICER TERRENCE | ) | |
| BENNETT, OFFICER JOE THOMPSON, | ) | |
| NURSE PELLMANN, NURSE KOCHMANN, | ) | |
| CHERYL PROST, and JOHN DOES 1-6, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Delarren Mason, by his undersigned attorneys, for his complaint against

Defendants Superintendent Donald Schaefer, St. Clair County, Officer Mike Kleb, Officer Craig

Brown, Officer Patrick Young, Officer Dale Luetkemyer, Officer Brandon Miller, Officer Ariel

Mosley, Officer Tyrone Sillas, Officer Zac Luetkemyer, Officer Lucas Gehrs, Officer Joe

Vallina, Officer Brianne Funk, Officer Terrence Bennett, Officer Joe Thompson, Nurse

Pellmann, Nurse Kochmann, Cheryl Prost, and As-Yet Unknown County of St. Clair Employees,

John Does 1-6, alleges as follows:

1

## INTRODUCTION

1.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff Delarren Mason's rights as secured by the Fourteenth Amendment to the United States Constitution.

2.      Delarren files this action to seek redress for injuries and damages suffered after he was imprisoned for a crime he did not commit and subjected to conditions of confinement that, according to the U.N. Special Rapporteur on Torture, constituted torture.

3.      In March 2015, Delarren was a 17-year-old enjoying work at a new job and was ready to re-enroll in high school.  Delarren lived with bipolar disorder and attention deficit hyperactivity disorder ("ADHD").  Delarren also had a history of asthma.  Additionally, after suffering a hit and run car accident at 12 years old, he also suffered from chronic headaches.

4.      After coercing a false confession from Delarren's intellectually handicapped 19-year-old brother, Jerry Outlaw, Cahokia Police Department officers implicated Delarren and Jerry for a crime that they had no knowledge of and did not commit.

5.      Delarren was subsequently charged as an adult for armed robbery.  He was placed in the St. Clair County Juvenile Detention Center ("Detention Center") for nearly eight months awaiting trial.  While there, Delarren was repeatedly harassed and punished by correctional officers without due process.  The officers placed Delarren in solitary confinement for nearly six months, causing him extreme mental anguish and suffering.

6.      The Detention Center staff also refused to treat Delarren's ADHD and bipolar disorder, including refusing to provide him with counseling or other therapeutic interventions and refusing to give him medication for his disabilities.  As a result, his mental state deteriorated over the course of his eight-month detention, causing him additional pain and suffering.

7.      Eventually, after nearly eight months, the court ordered that the case against Delarren be dismissed for three reasons: (1) the court received a finding from Dr. Daniel J. Cuneo that his brother and co-defendant Jerry was incapable of waiving his Miranda rights; (2) credible witnesses had come forward implicating two other suspects; and (3) Delarren had passed a lie detector test.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

9.      Venue is proper in this district under 28 U.S.C. § 1391(b).  Delarren resides in this judicial district and the events giving rise to the claims asserted herein occurred within this judicial district.

## PARTIES

10.      Plaintiff Delarren Mason is a citizen of the State of Illinois who resides within this judicial district.  He is currently eighteen years old.  Under the Americans with Disabilities Act he is a qualified person who lives with the disabilities of ADHD and bipolar disorder.  During the events described in this complaint, Delarren was seventeen years old.

11.      Defendant Donald Schaefer is the Superintendent of the St. Clair County Juvenile Detention Center.  At all times relevant to the events at issue in this case, Defendant Schaefer was employed by St. Clair County.  As such, he was acting under color of law.  At all times relevant to the events at issue in this case, Defendant Schaefer was responsible for implementing policies and procedures, supervising all staff, and managing all aspects of the Detention Center operations.  He is sued in his individual and official capacities.

12.      Defendant St. Clair County is a county of the State of Illinois.  It oversees the St. Clair County Juvenile Detention Center.

13.     Defendants Officer Mike Kleb, Officer Craig Brown, Officer Patrick Young, Officer Dale Luetkemyer, Officer Brandon Miller, Officer Ariel Mosley, Officer Tyrone Sillas, Officer Zac Luetkemyer, Officer Lucas Gehrs, Officer Joe Vallina, Officer Brianne Funk, Officer Terrence Bennett, Officer Joe Thompson, and John Does 1-6 are or were employees of the St. Clair County Juvenile Detention Center during the relevant period.  At all times relevant to the events at issue in this case, these defendants were acting under color of law and within the scope of their employment with the St. Clair County Juvenile Detention Center.  These defendants are sued here in their individual capacities.

14.     Defendants Nurse Pellmann, Nurse Kochmann, and Cheryl Prost are or were employees and/or contractors of the St. Clair County Juvenile Detention Center during the relevant period.  At all times relevant to the events at issue in this case, these defendants were acting under color of law and within the scope of their employment with the St. Clair County Juvenile Detention Center.  These defendants are sued here in their individual capacities.

## FACTUAL ALLEGATIONS

15.     On March 17, 2015, Delarren was placed into the custody of the St. Clair County Juvenile Detention Center.  Delarren was ordered to remain in custody after police officers coerced his developmentally disabled brother into confessing to an armed robbery.  This confession implicated Delarren.  After nearly eight months, all charges against Delarren and his brother were dismissed because: (1) Delarren's brother was incapable of waiving his Miranda rights; (2) credible witnesses had come forward implicating two other suspects; and (3) Delarren had passed a lie detector test.  At that point, Delarren and his brother were ordered to be released. During the time Delarren spent imprisoned while awaiting court dates for a crime he did not commit, he endured numerous violations of his rights as described more fully below.

**Delarren was Repeatedly Punished without Due Process**

16.     Delarren was detained in the St. Clair County Juvenile Detention Center for nearly eight months while the charges remained pending.

17.     While there, Delarren was consistently targeted and harassed by the Defendant Officers.  Delarren was punished 23 times by the Defendant Officers for various alleged rule violations and subjected to disciplinary segregation "room confinement" (or "lockup") where he was locked in his cell for hours and sometimes days on end.  Delarren spent 41 days total in disciplinary segregation.  While locked alone in his cell, the Defendants prohibited Delarren from having access to any books or documents or personal affects.  The Defendant Officers denied Delarren any due process—he was never given a hearing on his alleged infraction, never given the opportunity to be heard, never given the opportunity to present witnesses, and never given the opportunity to have a neutral decision maker decide if punishment was warranted. Delarren's punishments included:

      a.   On March 6, 2015, at 7:45 a.m., Defendant Officer Mike Kleb gave Delarren 8 hours room confinement for allegedly using profanity.

      b.   On March 29, 2015, at 11:30 a.m., Defendant Officer Craig Brown gave Delarren 8 hours room confinement for allegedly not following rules and for using profanity.

      c.   On March 30, 2015, at 10 p.m., Defendants Officer Patrick Young and Officer Dale Luetkemyer gave Delarren 16 hours room confinement for allegedly threatening staff, banging, and cursing.

      d.   On April 10, 2015, at 7:00 p.m., Defendant Officer Brandon Miller gave Delarren 24 hours room confinement for allegedly fighting with detainee D.J.

e.  On April 16, 2015, at 11:45 a.m., Defendant Officer Kleb gave Delarren 8 hours room confinement for allegedly disrespecting staff.

f.  On April 28, 2015, at 2:35 a.m., Defendant Officer Ariel Mosley gave Delarren 16 hours room confinement for inappropriate language, disruptive behavior, and disrespecting staff.

g.  On May 7, 2015, at 10:30 a.m., Defendant Officer Tryone Sillas gave Delarren 8 hours room confinement for allegedly saying a minor disrespectful remark.

h.  On May 22, 2015, at 8:00 a.m., Defendant Officer Kleb gave Delarren 8 hours room confinement for allegedly disrespecting staff by staff shopping.

i.  On May 25, 2015, at 9:50 a.m., Defendant Officer Kleb gave Delarren 8 hours room confinement for alleged horseplay.

j.  On May 28, 2015, at 10:00 p.m., Defendants Officer Zac Luetkemyer and Officer Brandon Miller gave Delarren 24 hours room confinement for allegedly fighting with detainee C.M.

k.  On June 16, 2015, at 12:05 a.m., Defendant Officer Lucas Gehrs gave Delarren 8 hours room confinement for banging and cursing.

l.  On June 26, 2015, at 2:00 p.m., Defendant Officer Joe Vallina gave Delarren 8 hours room confinement for allegedly banging on his door.

m.  On July 7, 2015, at 10:30 p.m., Defendant Officer Zac Luetkemyer gave Delarren 16 hours for allegedly cursing and banging.

n.  On July 16, 2015, at 8:15 p.m., Defendant Officer Brianne Funk gave Delarren 16 hours for allegedly banging.

o. On July 17, 2015, at 10:30 p.m., Defendant Officer Gehrs gave Delarren 8 hours room confinement for allegedly being disrespectful to staff and cursing.

p. On July 19, 2015, at 9:00 p.m., Defendant Officer Gehrs gave Delarren 24 hours room confinement for allegedly fighting with detainee C.M.

q. On July 22, 2015, at 8:00 a.m., Defendant Officer Kleb gave Delarren 8 hours room confinement for allegedly failing to follow staff directives.

r. On July 29, 2015, at 9:20 a.m., Defendant Officer Kleb gave Delarren 8 hours for allegedly disrespecting staff.

s. On August 11, 2015, at 6:00 p.m., Defendant Officer Gehrs gave Delarren 16 hours room confinement for allegedly not following staff's directions and threatening staff.

t. On August 15, 2015, at 11:00 p.m., Defendant Officer Terrence Bennett gave Delarren 16 hours room confinement for allegedly banging.

u. On September 12, 2015, at 9:15 a.m., Defendant Officer Brown gave Delarren 8 hours room confinement for allegedly cursing.

v. On September 28, 2015, at 7:00 p.m., Defendant Officer Gehrs gave Delarren 8 hours for allegedly drawing gang signs.

w. On October 9, 2015, at 10:00 p.m., Defendant Officer Joe Thompson gave Delarren 16 hours room confinement for allegedly disrespecting and threatening staff.

18.    Upon information and belief, Defendant Superintendent Donald Schaefer knew of and approved all of Delarren's punishments.  Part of Defendant Schaefer's duties as Superintendent was to pre-approve the imposition of discipline.  Further, Defendant Schaefer

7

received all of the incident reports detailing Delarren's alleged infractions, and even made comments and punishment recommendations on some of the incident reports.

**Delarren Spent Nearly Six Months in Solitary Confinement**

19.     In addition to the disciplinary segregation placements Delarren received, where he was not let out of his cell for sometimes two to three days straight, Delarren was also placed in solitary confinement for nearly six months.

20.     Delarren spent almost the entire six months in a cell on various cellblocks (or "dayrooms") in which he was the only detainee housed on that block; the other four cells on the cellblock remained vacant.  There were only a few times during that six month period where other detainees were housed in Delarren's same cellblock for a couple of days, usually over the weekend.

21.     During that six month period, Delarren spent on average 23 hours a day in his cell.  Delarren was let out of his cell on average once a day to shower.  He was also let out of his cell for about an hour a day for recreational time, where he was allowed to go to either the gym or classroom.

22.     Delarren had limited interaction with other detainees while he was in solitary. Each cellblock was considered a "group," and the Detention Center staff had discretion on which groups to let out for recreational time.  Because Delarren was by himself on the cellblock, he was his own group.  Often times, the Defendant Officers let Delarren out of his cell for his hour recreational time when no other groups were out.  Therefore, Delarren spent the majority of his out-of-cell time by all alone, with no one to interact with.

23.     The conditions in Delarren's cell while he was in solitary confinement were inhumane: his cell was window-less; maggots came out of his sink; the toilet smelled of human

8

waste; the floor was filthy; the mattress was ripped; he was rarely provided with clean sheets and blankets; he was regularly given dirty undergarments to wear; he had to run the water for a long time before it became hot; and the whole cellblock generally smelled of human waste.

24.     He was allowed only two books in his cell.

25.     Being in solitary confinement without any human interaction caused Delarren extreme mental anguish.  He acted out at times by banging on his cell door and yelling because the conditions of his confinement pushed him to a breaking point.  Living in those conditions while knowing that he was innocent was especially difficult.

26.     It is well-established that the practice of locking human beings in a cell for 23 hours a day causes profound mental anguish and a documented risk of serious harm.  Even short periods of isolation may have lasting, adverse mental health consequences.  Juan Mendez, the United States Special Rapporteur on torture, concluded that even 15 days in solitary confinement constitutes torture and that 15 days is the limit after which irreversible harmful psychological effects can occur.

27.     The people confined in these solitary confinement units are not provided with cleaning supplies.  They are forced to eat and use the toilet in the same small, unsanitary space.

28.     A number of professional associations have recognized the damage and mental suffering solitary confinement inflicts on teenagers and thus support an outright ban on the practice including the American Medical Association and the American Academy of Child and Adolescent Psychiatry.  Additionally, the United States Department of Justice Office of Juvenile Justice and Delinquency Prevention has declared that ending the use of solitary confinement in justice facilities is an agency priority.  The Federal Bureau of Prisons has banned the practice for teenagers entirely.

29.     Defendants Officer Kleb, Officer Brown, Officer Young, Officer Dale Luetkemyer, Officer Miller, Officer Mosley, Officer Sillas, Officer Zac Luetkemyer, Officer Gehrs, Officer Vallina, Officer Funk, Officer Bennett, and Officer Thompson were all responsible for keeping Delarren in solitary confinement.  These Defendants were responsible for maintaining the conditions in solitary that violated Delarren's constitutional rights.

30.     Upon information and belief, Defendant Superintendent Schaefer knew of and approved of Delarren's placement in solitary confinement.  Defendant Superintendent Schaefer also knew of and approved of all the conditions Delarren faced while in solitary.

**Delarren's Serious Medical Needs Were Left Untreated and the Defendants Refused to Accommodate his Disabilities**

31.     Defendant Nurse Kochmann conducted a medical screening on Delarren shortly after he entered the Detention Center on March 22, 2015.  Delarren informed Defendant Nurse Kochmann that he had received counseling in 2014 for his disabilities: ADHD and bipolar disorder.  He also informed her about his asthma and the car accident he was involved in when he was younger which resulted in his hospitalization and chronic headaches.

32.     Defendant Nurse Pellmann also examined Delarren.  Delarren informed Defendant Nurse Pellman of his history of counseling for his ADHD and bipolar disorder, and his history of asthma.

33.     On March 31, 2015, Defendant Cherly Prost, the Detention Center's Psychological Consultant, called Delarren's mother, Ms. Green, to alert her to Delarren's increasing anger control problems and defiance.  Defendant Prost relayed that Delarren had not had his medication for ADHD and bipolar disorder in eight months.  Ms. Green stated that she would try to get a psychiatric appointment for Delarren.

34.     Defendant Prost was already familiar with Delarren's mental illnesses because she had conducted a psychological evaluation of him in July of 2013.  At that time, Prost recommended Delarren get psychiatric treatment for his bipolar disorder.

35.     On April 1, 2015, Defendant Prost conducted a mental health status evaluation on Delarren.  Defendant Prost gave Delarren a provisional diagnosis of bipolar disorder and ADHD. She noted that Delarren had received counseling for his ADHD and bipolar disorder in early 2014, and that he had not taken his ADHD and bipolar medication in eight months.  Defendant Prost noted that Delarren's mother was going to schedule a psychiatric appointment for Delarren. Defendant Prost did not recommend any other treatment for Delarren.

36.     On April 13, 2015, Defendant Prost conducted another mental health status evaluation on Delarren.  This evaluation mirrored his previous one from April 1.  Additionally, Defendant Prost noted that Delarren had been in a fight with D.J. on April 10, 2015, and that this fight was the result of his rage control problems and no bipolar medication.

37.     Despite knowing Delarren's mental health history and that he suffered from bipolar disorder and ADHD, Defendants Prost, Nurse Pellman, and Nurse Kochmann did not provide Delarren with any medical and/or mental health treatment to help him monitor and control his disabilities.  They did not refer him to a psychiatrist.  They did not offer him counseling, talk therapy, or other type of therapeutic interventions aimed at controlling the symptoms of his mental illnesses.  Instead, they deferred responsibility to Delarren's mother, who was powerless to help Delarren while he was suffering in the Detention Center.

38.     These Defendants also did not provide him with any prescription medications to control his ADHD and bipolar disorder, despite their knowledge that he had previously taken prescription medication, and despite Delarren's repeated requests for medication.  Defendant

Prost recognized that Delarren's mood was deteriorating due to a lack of medication and that his behavioral issues in the Detention Center were manifestations of his disabilities, and yet she failed to take any measures to ensure that Delarren received the proper prescription medication while he was detained.

39.     All of the individual Defendants were aware of Delarren's disabilities, as his disabilities were well documented in his file.  However, none of the individual Defendants took any measures to accommodate Delarren's disabilities.  The Defendants failed to provide structured activities and interventions that would have allowed Delarren to control his behavior. They failed to provide him with more intensive supervision.  And they failed to identify non-punitive ways to manage his behavior, such as an incentive program.  The Defendants' disciplinary process should have involved an assessment of whether Delarren's actions were manifestations of his disabilities; their response to his actions should have been treatment centered instead of punitive.  Instead of accommodating Delarren's disabilities, the Defendants exacerbated his symptoms by repeatedly punishing him and keeping him in solitary confinement for nearly six months.  As a result, Delarren experienced tremendous mental anguish.

**Defendants Deprived Delarren of his Education**

40.     Prior to his placement in the Detention Center, Delarren was intending to enroll in the ninth grade at Cahokia High School.  During his confinement in the Juvenile Detention Center, Delarren was prohibited from attending classes or from attaining any sort of educational benefit.  He was occasionally provided worksheets to complete, but was denied the opportunity to earn academic credit or to advance his studies in accordance with his grade level.

41.     Defendant Superintendent Schaefer was aware that Delarren was school age and that he had a right to educational services.  Despite this fact, Defendant Superintendent Schaefer

refused to provide Delarren with educational services and failed to provide him with a teacher, academic materials, and the opportunity to earn academic credit that would transfer to his home school district.

**Delarren's Damages**

42.     Delarren spent seven and a half months in the Detention Center facing felony charges for a crime that he did not commit.  During his incarceration, Delarren was subjected to repeated trauma and abuse.  He was repeatedly punished by the Defendant Officers without any due process, and he was forced to stay nearly six months in solitary confinement under cruel and unusual conditions.  He was punished for manifestations of his disabilities, denied adequate treatment for his mental illness, and deprived of educational services without sufficient due process.

43.     As a result of the foregoing, Delarren has suffered tremendous damage, including but not limited to physical harm and mental suffering, all directly and proximately caused by the Defendants' actions.

**COUNT I**
**Punishment without Due Process in Violation of the**
**Fourteenth Amendment under 42 U.S.C. § 1983**

44.     Each paragraph of this Complaint is incorporated as if fully set forth in this Count.

45.     Count I is alleged against Defendants Superintendent Donald Schaefer, Officer Mike Kleb, Officer Craig Brown, Officer Patrick Young, Officer Dale Luetkemyer, Officer Brandon Miller, Officer Ariel Mosley, Officer Tyrone Sillas, Officer Zac Luetkemyer, Officer Lucas Gehrs, Officer Joe Vallina, Officer Brianne Funk, Officer Terrence Bennett, Officer Joe Thompson, and John Does 1-6.

46.     As a pretrial detainee, Delarren had a right to be free from punishment without due process under the Fourteenth Amendment to the United States Constitution.

47.     Delarren was cited 23 times by the individual Defendant Officers for various alleged rule violations and subjected to hours and sometimes days of room confinement. Delarren received these punishments without any due process.  The Defendant Officers denied Delarren his due process rights to a fair and impartial hearing on his alleged rule violations.  The Defendants denied Delarren an opportunity to be heard at such hearing, denied him the right to call witnesses to testify on his behalf, and denied him the right to have a neutral decision maker decide the outcome of the hearing.

48.     The Defendants' actions directly and proximately caused Delarren's injuries and damages, as more fully set forth above.

49.     The Defendants acted maliciously, willfully, wantonly, and/or with reckless disregard for Delarren's clearly established constitutional rights.

**COUNT II**
**Cruel and Unusual Conditions in Solitary in Violation of the**
**Fourteenth Amendment under 42 U.S.C. § 1983**

50.     Each paragraph of this Complaint is incorporated as if fully set forth in this Count.

51.     Count II is alleged against Defendants Superintendent Donald Schaefer, Officer Mike Kleb, Officer Craig Brown, Officer Patrick Young, Officer Dale Luetkemyer, Officer Brandon Miller, Officer Ariel Mosley, Officer Tyrone Sillas, Officer Zac Luetkemyer, Officer Lucas Gehrs, Officer Joe Vallina, Officer Brianne Funk, Officer Terrence Bennett, Officer Joe Thompson, and John Does 1-6.

14

52.     As a pretrial detainee, Delarren had a right to be free from cruel and unusual punishment under the Fourteenth Amendment to the United States Constitution.

53.     The Defendants' operation of unduly restrictive, filthy, unsanitary, and inhumane segregation units in which Delarren was locked in his cell for about 23 hours a day and was the only detainee on his cellblock, as described above, constitutes cruel and unusual punishment.

54.     By placing and keeping Delarren in solitary confinement for nearly six months, the Defendants knew of and disregarded a substantial risk of serious harm to Delarren's physical and mental health.

55.     In the alternative, the Defendants made an intentional decision with regard to the conditions under which Delarren was confined that put Delarren at a substantial risk of suffering serious harm.  The Defendants did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the Defendant's conduct obvious.[1]

56.     The Defendants' actions directly and proximately caused Delarren's injuries and damages, as more fully set forth above.

57.     The Defendants acted maliciously, willfully, wantonly, and/or with reckless disregard for Delarren's clearly established constitutional rights.

---

[1]  This portion of the claim is pled on the basis of "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(2).

## COUNT III
### Failure to Provide Adequate Medical and Mental Health Care in Violation of the Fourteenth Amendment under 42 U.S.C. § 1983

58.     Each paragraph of this Complaint is incorporated as if fully set forth in this Count.

59.     Count III is alleged against Defendants Nurse Pellmann, Nurse Kochmann, and Cheryl Prost.

60.     As a pretrial detainee, Delarren had a right to be provided adequate medical and mental health care under the Fourteenth Amendment to the United States Constitution.

61.     The Defendants knew of Delarren's mental health history and that he suffered from ADHD and biopolar disorder, yet failed to provide him any medical and/or mental health care to treat his disorders.  They failed to refer him to a psychiatrist.  They failed to provide him counseling, talk therapy, or any other therapeutic interventions, and they failed to provide him prescription medication.

62.     By failing to provide Delarren adequate medical and/or mental health care, the Defendants knew of and disregarded a substantial risk of serious harm to Delarren's physical and mental health.

63.     In the alternative, the Defendants made an intentional decision with regard to Delarren's medical and mental health care that put Delarren at a substantial risk of suffering serious harm.  The Defendants did not take reasonable available measures to abate that risk, even though a reasonable medical professional in the circumstances would have appreciated the high degree of risk involved—making the consequences of the Defendant's conduct obvious.[2]

---

[2]  This portion of the claim is pled on the basis of "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(2).

64.     The Defendants' above-described actions and omissions directly and proximately caused Delarren's injuries and damages, as more fully set forth above.

65.     The Defendants' actions and omissions were undertaken with malice and/or reckless disregard for Delarren's clearly established constitutional rights.

## COUNT IV
## American with Disabilities Act ("ADA"), 42 U.S.C. § 1983

66.     Each paragraph of this Complaint is incorporated as if fully set forth in this Count.

67.     Count IV is alleged against Defendant Superintendent Schaefer in his official capacity.

68.     As described more fully in the proceedings paragraphs, Delarren lived with ADHD and bipolar disorder and is a qualified person with disabilities under the Americans with Disabilities Act, and his disabilities were known to the individual Defendants.  As a result, the Defendants had an obligation to accommodate his disabilities by, inter alia, providing him structured activities and interventions that would have allowed him to control his behavior; providing him more intensive supervision; and identifying non-punitive ways to manage his behavior instead of punishing him for manifestations of his disabilities.

69.     The Defendants intentionally failed to accommodate Delarren's disabilities, and these failures led to Delarren's injuries and damages.

**COUNT V**
**Dual Conspiracies to Deprive Constitutional Rights under 42 U.S.C. § 1983**

70.     Each paragraph of this Complaint is incorporated as if fully set forth in this Count.

71.     Count V is alleged against Defendants Superintendent Donald Schaefer, County of St. Clair, Officer Mike Kleb, Officer Craig Brown, Officer Patrick Young, Officer Dale Luetkemyer, Officer Brandon Miller, Officer Ariel Mosley, Officer Tyrone Sillas, Officer Zac Luetkemyer, Officer Lucas Gehrs, Officer Joe Vallina, Officer Brianne Funk, Officer Terrence Bennett, Officer Joe Thompson, and John Does 1-6.

72.     There were dual conspiracies to deprive Delarren of his constitutional rights. First, these Defendants and other as-yet-unknown co-conspirators reached an agreement among themselves to repeatedly punish Delarren by locking him up in his cell for hours and sometimes days on end without due process and to thereby deprive Delarren of his Fourteenth Amendment right, as described in the paragraphs above.

73.     Second, these Defendants and other as-yet-unknown co-conspirators reached an agreement among themselves to place and keep Delarren in solitary confinement—locked in his cell for 23 hours a day while housed in a cellblock all alone—in inhumane conditions and to thereby deprive Delarren of his Fourteenth Amendment right, as described in the paragraphs above.

74.     In these manners, the Defendants, acting in concert with other as-yet unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

75.     In furtherance of the conspiracies, each of the co-conspirators committed overt acts, as described above in the Complaint, and was an otherwise willful participant in joint activity.

76.     Each of the individual named Defendants acted maliciously, willfully, wantonly, and/or with reckless disregard for Delarren's clearly established constitutional rights.

77.     As a direct and proximate result of the Defendants' misconduct, Delarren suffered injuries, as more fully alleged above.

**COUNT VI**
**State Law Claim for Intentional Infliction of Emotional Distress**

78.     Each paragraph of this Complaint is incorporated as if fully set forth in this Count.

79.     Count VI is alleged against all the individual Defendants.

80.     The acts and conduct of the Defendants, as set forth above, were extreme and outrageous.  The Defendants' actions were rooted in an abuse of power and authority, and were undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Delarren, as is more fully alleged above.

81.     As a direct and proximate result of the Defendants' actions, Delarren suffered and continues to suffer severe emotional distress damages.

**COUNT VII**
**State Law Claim for Civil Conspiracy**

82.     Each paragraph of this Complaint is incorporated as if fully set forth in this Count.

83.     Count VII is alleged against all the individual Defendants.

19

84.     As described more fully in the preceding paragraphs, the Defendants, acting in concert with other as-yet unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

85.     In furtherance of the conspiracy, the Defendants committed overt acts and were otherwise willful participants in joint activity including but not limited to the intentional infliction of emotional distress upon Delarren.

86.     The misconduct described in this Count was undertaken intentionally, with malice, willfulness, and/or reckless disregard to Delarren's rights.

87.     As a direct and proximate result of the Defendants' conspiracy, Delarren suffered injuries, including severe emotional distress and anguish, as is more fully alleged above.

## COUNT VIII
## State Law Claim for Respondeat Superior

88.     Each paragraph of this Complaint is incorporated as if fully set forth in this Count.

89.     Count VIII is alleged against Defendant Superintendent Schaefer in his official capacity.

90.     In committing the acts alleged in the preceding paragraphs, the individual Defendants are or were employees and/or contractors, members, and agents of the St. Clair County Juvenile Detention Center, acting at all relevant times within the scope of their employment.

91.     Defendant Superintendent Schaefer is liable as principal for all torts committed by his agents.

## COUNT IV
### Denial of Property Interest without Due Process of Law under the Fourteenth Amendment to the U.S. Constitution

92.     Each paragraph of this Complaint is incorporated as if fully set forth in this Count.

93.     Count IV is alleged against Defendant Superintendent Schaefer in his individual and official capacities.

94.     By depriving Delarren of educational services to which he was entitled without due process, Defendant Superintendent Schaefer violated Delarren's rights as secured by the Fourteenth Amendment to the U.S. Constitution.

## COUNT V
### State Law Claim for Violations of the Illinois Constitution Right to Education

95.     Each paragraph of this Complaint is incorporated as if fully set forth in this Count.

96.     Count V is alleged against Defendant Superintendent Schaefer in his individual and official capacities.

97.     By depriving Delarren of educational services, Defendant Superintendent Schaefer violated Delarren's rights as secured by the Illinois State Constitution, Art. X, Sec. 1.

## COUNT VI
### State Law Claim for Indemnification

98.     Each paragraph of this Complaint is incorporated as if fully set forth in this Count.

99.     Count IV is alleged against Defendant St. Clair County.

21

100.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

101.    All of the individual Defendants are or were employees and/or contractors of Defendant St. Clair County who acted within the scope of their employment in committing the misconduct described above.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Delarren Mason, respectfully requests that this Court enter judgment in his favor against Defendants, awarding compensatory damages, costs and attorneys' fees, and punitive damages against each of the Defendants in their individual capacities, and for such further additional relief as this Court may deem appropriate and just.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated: December 16, 2016

Respectfully submitted,

**DELARREN MASON**

By: /s/ Vanessa del Valle
    One of his attorneys

Locke E. Bowman
l-bowman@law.northwestern.edu
Sheila A. Bedi
sheila.bedi@law.northwestern.edu
Vanessa del Valle
vanessa.delvalle@law.northwestern.edu
Roderick and Solange MacArthur Justice Center
Northwestern Pritzker School of Law
375 East Chicago Avenue
Chicago, IL 60611

(312) 503-1271

LaToya M. Berry
Law Offices of LaToya M. Berry
901 West Main
Belleville, IL 62220
(618) 567-4837
missberry_esq@yahoo.com